IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

**ROBERT HAROLD MUNNERLYN**                                                  **PLAINTIFF**
**ADC #86196**

v.                              No: 5:17-cv-00113 SWW-PSH

**OJIUGO IKO**, *et al.*                                                      **DEFENDANTS**

## FINDINGS AND RECOMMENDATION

### INSTRUCTIONS

The following proposed Findings and Recommendation have been sent to United States District Judge Susan Webber Wright. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

### DISPOSITION

### I. Introduction

Plaintiff Robert Harold Munnerlyn filed a complaint pursuant to 42 U.S.C. § 1983 on April 18, 2017 (Doc. No. 2). On May 5, 2017, he filed an amended complaint (Doc. No. 8). Munnerlyn sues Rory Griffin, Correct Care Solutions (CCS), and Dr. Ojiugo Iko in both their official and individual capacities. Doc. No. 8 at 2. Munnerlyn's claims against CCS were previously dismissed. *See* Doc. Nos. 77 & 83. Munnerlyn alleges that the Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment to the United States

Constitution. *Id.* at 11. Munnerlyn also alleges that Dr. Iko's actions constitute the tort of negligence and intentional infliction of emotional distress under Arkansas law. *Id.* Munnerlyn additionally claims that Griffin is liable because he failed to take corrective action. *Id.* at 11-12. Munnerlyn seeks both injunctive relief and money damages. *Id.* at 12-14.

Munnerlyn specifically alleges that despite a medical history showing he should not be on work duty and prior restrictions that kept him off work duty, he was assigned to field utility from May 8, 2014, until September 18, 2014. *Id.* at 5. Munnerlyn alleges that he sought medical attention for various conditions that were aggravated by his field duty. *Id.* at 7-8. He complains that Dr. Iko denied his request to see a specialist regarding a heel spur and special footwear he believed he needed, and that she provided him with an ineffective ankle brace instead. *Id.* at 8. Munnerlyn also alleges that Dr. Iko diagnosed him with a reoccurrence of skin cancer in 2011 but never ensured that he was referred to a specialist. *Id.* Munnerlyn asserts he was finally diagnosed with skin cancer again on June 9, 2015, and that the delay in diagnosis resulted in metastasis of the cancer and a more invasive procedure to remove it than would have been required had it been diagnosed earlier. *Id.* at 8-9. Finally, Munnerlyn claims that Dr. Iko failed to provide him with appropriate pain medication following the removal of the cancer. *Id.* at 10.

Before the Court are motions for summary judgment and related pleadings filed by Griffin and Dr. Iko, claiming that Munnerlyn did not exhaust his claims against them before he filed this lawsuit (Doc. Nos. 40-42, 65-67). Munnerlyn responded to both motions. *See* Doc. Nos. 49-52, 69-71. Dr. Iko filed a reply (Doc. No. 54); Griffin filed a reply (Doc. No. 72); and Munnerlyn filed additional responses (Doc. Nos. 73 & 74). The Court held an evidentiary hearing on July 29, 2018, to obtain more information regarding three grievances filed by Munnerlyn: VU-14-1325,

VU-15-1432, and VU-15-1433. For the reasons described herein, the undersigned recommends granting the pending motions for summary judgment.

## II. Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .". Fed. R. Civ. P. 56(c)(1)(A). A party may also show that a fact is disputed or undisputed by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are

about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III. Analysis

A.  ***Exhaustion of Administrative Remedies***

Dr. Iko and Griffin argue they are entitled to summary judgment because Munnerlyn failed to exhaust his administrative remedies as to his claims against them before he filed this lawsuit. The Prison Litigation Reform Act (PLRA) requires an inmate to exhaust prison grievance procedures before filing suit in federal court. *See* 42 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199, 202 (2007); *Burns v. Eaton*, 752 F.3d 1136, 1141 (8th Cir. 2014). Specifically, § 1997e(a) provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion under the PLRA is mandatory. *Jones v. Bock*, 549 U.S. at 211; *Hammett v. Cofield,* 681 F.3d 945, 949 (8th Cir. 2012). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The PLRA does not prescribe the manner in which exhaustion occurs. *See Jones v. Bock*, 549 U.S. at 218. It merely requires compliance with prison grievance procedures to properly exhaust. *See id*. Thus, the question as to whether an inmate has properly exhausted administrative remedies will depend on the specifics of that particular prison's grievance policy. *See id*.

Pursuant to the ADC's grievance policy, inmates are provided Unit Level Grievance Forms as part of the Inmate Grievance Procedure. *See* Doc. No. 42-1 at 6. To resolve a problem, an

inmate must first seek informal resolution by submitting a Step One Unit Level Grievance Form within 15 days after the occurrence of the incident. *Id.* at 7. Inmates are to "specifically name each individual involved for a proper investigation and response to be completed by the ADC." *Id*. at 6. An inmate must be "specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate submitting the form." *Id*. at 7-8. A problem solver investigates the complaint and provides a written response at the bottom of the form. *Id.* at 8-9. If the inmate is not satisfied with the resolution, he may then complete Step Two of the grievance procedure and submit the form as a formal grievance. *Id.* at 10. If a formal grievance is medical in nature, it is forwarded to the appropriate medical personnel for response. *Id.* at 11. If the inmate receives no response, or if the inmate is not satisfied with the response, the inmate can appeal to the Deputy Director for Health and Correctional Programs. *Id.* at 12-13. An inmate's appeal must be written in the space provided on the Health Services Response to Unit Level Grievance Form or the Acknowledgment or Rejection of Unit Level Grievance. *Id.* at 13. The ADC inmate grievance policy informs the inmates that only what is written in the space provided for appeal will be considered part of the grievance appeal, and that additional sheets should not be attached and will be returned to the inmate upon receipt of the appeal or as soon as practical. *Id.* The inmate must include the original Unit Level Grievance Form (Attachment I) and either the Health Services Response to Unit Level Grievance Form (Attachment IV) or the Acknowledgement or Rejection of the Unit Level Grievance (Attachment II) with his appeal. *Id.* If an inmate fails to submit either of the two pages with his appeal, the appeal may be returned to the inmate as rejected. *Id.*

Once the Deputy Director responds, the grievance process is exhausted. *Id.* at 14. According to the ADC's grievance policy, the entire grievance procedure should be completed

within 76 working days absent an extension or unforeseen circumstances. *Id.* at 15. The grievance policy specifically states that inmates must exhaust administrative remedies at all levels of the procedure before filing a federal civil rights lawsuit. *Id.* at 19.

### B. *The Grievances*

The parties agree that Munnerlyn fully exhausted two grievances relating to his medical care before he filed this lawsuit: VU-14-644 (complaining about lack of sun protection while working) and VU-14-701 (complaining about pain and asking to be seen by a specialist).[1] *See* Doc. No. 42 at 27-32. Both of these grievances were previously discussed in the Court's Proposed Findings and Partial Recommendation entered on June 1, 2018. *See* Doc. No. 77. Neither grievance names Dr. Iko or Griffin, describes their behavior, or otherwise provides the ADC with any reason to investigate their behavior. Accordingly, neither grievance serves to exhaust Munnerlyn's claims against Dr. Iko or Griffin. *See generally Burns v. Eaton*, 752 F.3d 1136 (8th Cir. 2014) (the Court affirmed the dismissal of a claim against a defendant who was not named in the grievance and whose conduct was not addressed in the grievance); *see also Daniels v. Hubbard,* No. 5:14CV00360 BSM, 2015 WL 9222627, at *1–2 (E.D. Ark. Dec. 17, 2015) (The failure to name a defendant as required by the ADC grievance policy may constitute a procedural defect that is waived if the defendant's conduct forming the basis of the claim against him or her is adequately described in the grievance and the failure to name the defendant does not prevent the ADC from investigating the grievance on the merits).

Munnerlyn asserts that he also exhausted (or should be excused from exhausting) the following grievances: VU-14-1325; VU-14-1125; VU-15-1432; and VU-15-1433. The first three grievances name Dr. Iko and the last grievance names Griffin. Dr. Iko and Griffin argue that

---

[1] Munnerlyn also exhausted VU-12-00160 but he concedes that it is unrelated to this case. *See* Doc. No. 50 at 1.

Munnerlyn failed to follow required ADC policy with respect to appealing these grievances, and that they are therefore not exhausted.  Each grievance is discussed below.

### VU-14-1125

Munnerlyn submitted VU-14-1125 on August 18, 2014, stating:

> ON 8-13-14 I WAS SEEN BY DR. IKO, I EXPLAINED TO HER THAT MY MEDS WERE NOT WORKING DUE TO MORE STRENUOUS DUTY WAS REQUIRED OF ME AND THAT THE SLEEVE/BRACE THAT SHE ISSUED ME WAS CUTTING THE CIRCULATION TO MY TOES OFF AND MY FOOT WAS SWOLLEN.  I ALSO INFORMED HER THAT THIS SLEEVE/BRACE WAS NOT KEEPING MY ANKLE FROM OVEREXTENDING FROM SIDE-TO-SIDE LIKE MY RIGID BRACE THAT WAS PREVIOUSLY ISSUED TO ME DID, LEAVING MY TENDONS AND LIGAMENTS INFLAMED.  SHE JUST SMILED AND SAID THAT SHE GUESSED THAT THE FIRST SLEEVE/BRACE WAS TOO SMALL AND SHE ORDERED ME A LARGER ONE, WITHOUT ADDRESSING THE STABILITY PROBLEM.  DR. IKO IS EXPERIMENTING ON ME INSTEAD OF ALLOWING DR. SHOCK OR OTHER BONE/LIGAMENT SPECIALIST TO EVALUATE MY MEDICAL ISSUES.  WITHOUT INTERVENTION, I WILL BE REQUIRED TO GO TO WORK IN THE FIELD WITHOUT PROPER SUPPORT FOR MY ANKLE.  DR. IKO'S EVALUATION AND TREATMENT OF MY MEDICAL NEEDS COULD BE DEEMED DELIBERATELY INDIFFERENT. I ALSO ASKED HER ABOUT MY 20 LB WEIGHT LIMITATION. AS THE FIELD RIDER REQUIRES LIFTING 30-40 LB BAGS OF PRODUCE AND CARRYING THEM 300-400 YDS ON MY BAD ANKLE.  SHE SAID THAT THE 20 LB LIMITATION WAS ONLY FOR HERNIAS.  I TOLD HER I HAVE NO HERNIA, MY ANKLE WAS THE ORIGINAL REASON FOR THE LIMITATION.  MY ANKLE AND ARTHRITIS CANT TAKE THE EXTRA POUNDS.  THERE IS ALSO THE ISSUE OF MY PELVIS/BACK & SHOULDER!  PLEASE LET ME SEE DR. SHOCK!  I AM 54 YEARS OLD.  MY PHYSICAL LIMITATIONS ARE NOT THAT OF A 20 OR 30 YEAR OLD!

Doc. No. 50 at 17.  Munnerlyn proceeded to Step Two on August 20, 2014.  *Id.*  According to Shelly Byers, the ADC's Medical Grievance Coordinator, a response to VU-14-1125 was due by October 6, 2014. Doc. No. 54-1 at 1-2 & 7.  Health Services did not respond by the deadline, and Munnerlyn did not appeal the lack of response.  *Id.* at 2.  Health Services finally responded on October 29, 2014, finding the grievance without merit because job assignments are not grievable unless they are in conflict with current medical restrictions.  *Id.* at 8.  Munnerlyn appealed the late

7

response on November 3, 2014, and included a 2-page letter with his appeal. *Id.* at 8-11. The appeal was rejected as untimely. *Id.* at 12. On November 12, 2014, Byers wrote Munnerlyn a letter informing him why his appeal was rejected as untimely. *Id.* at 13. She explained that per policy, an inmate must appeal within five working days of not receiving a response within the time specified on the acknowledgement form or extension form. *Id.*

### VU-14-1325

Munnerlyn initiated VU-14-1325 on September 26, 2014, stating:

MEDICAL STAFF REPEATEDLY TAKES $3.00 FROM MY ACCOUNT BUT YET NOTHING IS BEING DONE. YOU HAVE CONSISTENTLY SEEN ME BUT DID NOTHING FOR MY EYE PROBLEM (PREVIOUS OPERATION FOR BASAL CELL CA AND SKIN GRAFT. I HAVE PAID SEVERAL TIMES FOR NOTHING I WANT MY MONEY BACK. IT HAS BEEN OVER A YEAR THAT I WAS SENT TO A PROCTOLOGIST [SIC] FOR MY EYE PROBLEM AND I AM VERY TIRED OF THIS RUN-AROUND. PLEASE GIVE ME MY MONIES BACK AND FINISH TREATING. I AM DOCUMENTING THIS FOR FUTURE LITIGATION, I FEEL THAT CCS IS BEING DELIBERATELY INDIFFERENT TO MY MEDICAL NEEDS. DR. IKO HAS SHOWN TIME AND TIME AGAIN THAT SHE IS INDIFFERENT TO THIS PROBLEM OF MINE, I HAVE TOLD HER TIME AND TIME AGAIN, ALSO ON THE 9-25-14 I TALKED WITH A SICK CALL NURSE AND DR. CLOWERS AND HAVE STILL NOT BEEN TREATED! PLEASE HELP ME!

Doc. No. 50 at 20. Munnerlyn proceeded to Step Two on October 3, 2014, and received an acknowledgement on October 7, 2014, stating that he should receive a response by November 3, 2014. *Id.* at 20-21. Health Services did not respond by November 3. Munnerlyn claims he appealed the non-response on November 5, 2014, by placing a copy of the acknowledgement (Attachment II) along with a letter in the grievance box. *Id.* at 22-23; Doc. No. 51 at 3. Neither the acknowledgement form nor the letter submitted by Munnerlyn in this case was stamped as received by Health Services. *Id.*

Health Services finally responded on December 2, 2014, and Munnerlyn completed the appeal section of that form (Attachment IV) which he says he placed in the grievance box. *Id.* at

8

24; Doc. No. 51 at 3. Byers, however, declares that her office never received an appeal of VU-14-1325. Doc. No. 54-1 at 2-3. She states that her office always sends an acknowledgement when they receive an appeal, and they did not do so with respect to this grievance. *Id*. at 3.

At the evidentiary hearing, Munnerlyn testified that he put his November 5 appeal in an envelope addressed to the deputy director and placed it into the "truck box" for outgoing mail. He said he did not receive any acknowledgment that it had been received. He stated he wrote many letters to the deputy director on all his grievances but only received one response. Munnerlyn also acknowledged that Byers had previously returned to him documents he had mailed in with explanations as to why they were not accepted; he acknowledged those documents had been stamped as received. Munnerlyn admitted his November 5 appeal and accompanying letter had not been stamped, and explained that he believes they were lost and had not been received by Byers.

Byers testified about her office's procedure with respect to incoming mail. She explained that her assistant checks the mail every day and date stamps every document they receive. Byers confirmed that the "truck box" is the appropriate box in which to place a grievance appeal because that is the mail box, and the grievance policy states that appeals should be mailed to the deputy director. Byers acknowledged that there is no tracking system to ensure that a prisoner's mail is received.

Byers testified that she had reviewed her grievance files and found no records with respect to VU-14-1325. Byers explained that she keeps folders for every grievance that an inmate appeals. Byers stated that VU-14-1325 is reported on EOMIS (Electronic Offender Management Information System), the prison's electronic records of prisoner's grievances, but EOMIS does not reflect that Munnerlyn filed an appeal. A copy of the EOMIS record for VU-14-1325 was entered

9

into evidence and has since been docketed. *See* Doc. No. 42-4. Byers testified that if Munnerlyn had appealed this grievance, the appeal, its acknowledgement date, and its response date would have been added to EOMIS. Byers further testified that if Munnerlyn had appealed, he would have received an acknowledgement or rejection form. Byers testified that she received no letters from Munnerlyn regarding this particular appeal, or they would have been in her records.

### **VU-15-1432**

On August 4, 2015, Munnerlyn initiated VU-15-1432, stating:

> DR. IKO WAS DELIBERATELY INDIFFERENT TO MY HEALTH. ON 7-22-15 IT WAS CONFIRMED THAT I HAD SKIN CANCER FROM EXPOSURE TO SUNLIGHT. THIS IS A DIRECT RESULT OF THE EXPOSURE I RECEIVED AFTER BEING ASSIGNED TO FIELD UTILITY AND FORCED TO WORK IN DIRECT SUNLIGHT WITHOUT ANY U.V. PROTECTION. IT WAS WELL DOCUMENTED IN MY MEDICAL HISTORY THAT I WAS HIGHLY SUSCEPTIBLE TO SKIN CANCER, HERE BASEL CELL CARCINOMA, WHEN EXPOSED TO DIRECT SUNLIGHT WITHOUT PROTECTION. I WAS OVEREXPOSED FROM MAY 2014 TO SEPTEMBER 2014. DESPITE MY MEDICAL RECORD AND OVER MY PROTESTS TO DR. IKO THAT EXPOSURE TO DIRECT SUNLIGHT WOULD BE DANGEROUS TO MY HEALTH, DR. IKO WAS DELIBERATELY INDIFFERENT TO MY CONCERN, WELFARE, AND PHYSICAL HEALTH. AS A RESULT, I HAVE SUFFERED PHYSICAL DAMAGE, PERMANENT SCARRING TO MY FACE, AND REOCCURENCE OF SKIN CANCER.

Doc. No. 50 at 25. After no response was made, Munnerlyn proceeded to Step Two on August 11, 2015. *Id.* The same day, an acknowledgment form (Attachment II) was issued informing Munnerlyn that he should receive a response to his formal grievance by September 9, 2015. *Id.* at 26. Health Services did not respond to the formal grievance by September 9. Instead, it finally responded on October 13, 2015, stating that Munnerlyn's medical records had been reviewed and there was no record of him complaining to Dr. Iko about over exposure to sunlight. *Id.* at 30. Munnerlyn appealed the late response on October 20, 2015. *Id.* at 30-31. Munnerlyn's appeal was rejected for being untimely. *Id.* at 32.

Dr. Obi has provided a copy of the acknowledgement form in issue that is stamped "received October 28, 2015," and states "FAILURE TO FOLLOW POLICY HAS RESULTED IN A REJECTION FOR THIS APPEAL AND MARKS THE END OF THE APPEAL PROCESS." Doc. No. 54-1 at 16. Byers declared that Munnerlyn failed to appeal the lack of a response. Doc. No. 54-1 at 2.

Munnerlyn has submitted a different copy of the acknowledgment form that includes an appeal of the formal grievance dated September 15, 2015, six days after a response was due. In it, he states that he is appealing because he did not receive a response, and attaches a two-page letter regarding his appeal. Doc. No. 50 at 27-29. Munnerlyn states in his pleadings that he deposited his appeal of the non-response in the grievance box. Doc. No. 51 at 3. However, the form and the two-page letter are not stamped as received by Byers' office. Doc. No. 50 at 27-29.

At the evidentiary hearing, Munnerlyn testified that he believes he placed his September 15 appeal of the non-response in the truck box, and he believes he wrote letters when he received no response. Byers testified that her office did not receive an appeal of the non-response or the attached letter, specifically Doc. No. 50 at 27-29. She also noted that while those documents are not stamped, Munnerlyn's October 20 appeal of the late response is stamped as received.

Munnerlyn submitted copies of letters he wrote with respect to other grievances (VU-14-644 and VU-14-701) which were not stamped. Doc. No. 69-4. Byers could not say whether she had received those letters, but claims they would be stamped if she had received them. Byers submitted a second supplemental declaration on July 31, 2018, stating she had reviewed the letters submitted by Munnerlyn and reviewed her appeal files for any letters submitted by Munnerlyn in 2014. *See* Doc. No. 87 at 1. She did not find the letters in question but found three other letters

11

submitted by Munnerlyn in 2014, all of which related to VU-14-1125 and all of which were date stamped. *Id.*

### VU-15-1433

Munnerlyn initiated VU-15-1433 on August 5, 2015, stating:

> DEPUTY DIRECTOR RORY GRIFFIN WAS DELIBERATELY INDIFFERENT TO MY HEALTH COMPLAINT. ON 7-22-15 IT WAS CONFIRMED THAT I HAD SKIN CANCER FROM EXPOSURE TO SUNLIGHT. THIS IS A DIRECT RESULT OF THE EXPOSURE I RECEIVED AFTER BEING ASSIGNED TO FIELD UTILITY AND FORCED TO WORK IN DIRECT SUNLIGHT. AS I STATED IN MY PREVIOUS GRIEVANCE #VU-14-00644 I HAVE A WELL DOCUMENTED HISTORY OF SKIN CANCER, HERE, BASEL CELL CARCINOMA. DEP. DIR. GRIFFIN WAS DELIBERATELY INDIFFERENT TO MY CONCERN, WELFARE AND PHYSICAL HEALTH WHEN HE STATED, "THERE ARE NO INDICATIONS OF DEGENERATIVE EYE DISEASE OR SKIN CANCER PRESENT IN YOUR MEDICAL RECORD." HE IGNORED THE FACT THAT I HAD SKIN CANCER IN 1998 RESULTING IN SURGERY AND THAT I AM SUSPEPTIBLE TO SKIN CANCER WHEN EXPOSED TO DIRECT SUNLIGHT. ALSO THERE APPEARS TO BE A DOUBLE STANDARD OF SKIN CANCER CONCERN BY ADC AS THE "ADC ADVOCATE" WARNED IN HEALTH MATTER THAT "WITH ALL THE INFORMATION BEING PRESENTED ABOUT SKIN CANCER, IT MAKES SENSE TO PROTECT YOURSELF. YOU MAY BE AT HIGHER RISK IF YOU HAVE . . . A FAMILY HISTORY OF CANCER . . ." [MAY 2011, PG. 67]. APPARENTLY RORY GRIFFIN THINKS IT DOES NOT APPLY TO ME.

Doc. No. 50 at 33. Munnerlyn received no response and proceeded to a Step Two formal grievance on August 11, 2015. An acknowledgment form (Attachment II) was issued informing Munnerlyn that he could expect a response to his formal grievance by September 9, 2015. *Id.* at 34. He received no response by that date. Munnerlyn claims he appealed the non-response on September 15, 2015. He attaches an appeal written on the acknowledgement form (Attachment II) dated September 15, 2015, indicating he had not received a response. *Id.* at 35. This document contains no stamp indicating it was received by Byers' office. However, each page of a two-page letter Munnerlyn claims was attached was stamped "received September 22, 2015." *Id.* at 36-37. Those stamps are crossed out, and stamps indicating that the letter was received by the deputy director's

12

office on October 1, 2015 remain. *Id.* at 36-37; Doc. No. 54-1 at 23-24. Munnerlyn states in pleadings that he deposited the appeal in the grievance box. Doc. No. 51 at 4.

    Byers acknowledges that she received an appeal from Munnerlyn, but not the document he has submitted. She testified she received an acknowledgment form from Munnerlyn that did not contain a written appeal in the space provided on the form. Doc. No. 72-1 at 2. The rejection states that the appeal was rejected because Munnerlyn did not complete Attachment III or IV with his name, ADC#, and/or date. Doc. No. 50 at 38. The copy of this document submitted by Dr. Iko also has a notation on it: "no name, date or ADC#  Response not entered in EOMIS. Email sent to HSA on 10-5-15. Reject 10-5-15 SB". Doc. No. 54-1 at 25. Munnerlyn asserts he could not appeal on Attachment III or IV because he had not received either form. Doc. No. 51 at 4; Doc. No. 69 at 6.

    Health Services responded to Munnerlyn's formal grievance on October 7, 2015, saying that it was being returned without a determination of merit because his complaint concerned an ADC employee and Health Services only responds to medical complaints. Doc. No. 54-1 at 26. Munnerlyn appealed on October 20, 2015, and attached a letter. *Id.* at 26-28. The record does not include a copy of the rejection of that appeal. However, Byers wrote Munnerlyn on October 28, 2015, informing him that the appeal was rejected based on his failure to follow policy. *Id.* at 29.

    At the evidentiary hearing, Munnerlyn explained that he initially marked this grievance as non-medical but someone marked out his designation and re-directed it to medical. Munnerlyn submitted the original yellow copy and a white copy showing the re-designation as medical. Doc. Nos. 69-2 & 69-3. Munnerlyn testified he appealed the lack of a response on September 15, 2015, by submitting Attachment II with his appeal written on it along with his signature, ADC number,

13

and date.  He stated that he also attached a two-page letter to his appeal.  He says he mailed those together by placing them in the truck box.

Byers testified that on October 1, 2015, she received a copy of VU-15-1433, a copy of the acknowledgment/rejection form (Attachment II) with no handwriting other than "EX-R" written on it, and a letter from Munnerlyn explaining why he was appealing. She explained that the letter was initially received on the institutional side as a non-medical grievance so it was stamped received September 22, 2015, by that office, and those stamps were marked out by her office when they received them on October 1, 2015.

## C.     *Exhaustion as to Dr. Iko and Griffin*

Munnerlyn identified three grievances that may exhaust his claims as to Dr. Iko (VU-14-1125, VU-14-1325, and VU-15-1432) and one that may exhaust his claims as to Griffin (VU-15-1433).  Prison officials did not timely respond to those grievances.  Accordingly, the essential legal issue with respect to these grievances is whether the ADC grievance policy requires a prisoner to appeal a non-response, even if he subsequently receives a late response.  As explained below, the Court finds that it does.  With respect to three of the grievances, Munnerlyn contends he timely appealed the non-response while prison officials maintain those appeals were never received.  That raises an evidentiary issue as to whether or not he actually appealed those non-responses.  Based on the evidence in the record, the Court finds he did not.[2]  Finally, Munnerlyn claims the grievance

---

[2] While the Eighth Circuit Court of Appeals does not appear to have addressed whether a prisoner has a Seventh Amendment right to have a jury resolve factual issues relating to exhaustion, other circuit courts have held that judges rather than juries should resolve such factual issues.  *See Albino v. Baca,* 747 F.3d 1162, 1170–71 (9th Cir. 2014) ("[D]isputed factual questions relevant to exhaustion should be decided by the judge, in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue."); *Dillon v. Rogers,* 596 F.3d 260, 272 (5th Cir. 2010) ("Since exhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time, we conclude that judges may resolve factual disputes concerning exhaustion without the participation of a jury."); *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008) ("Juries decide cases, not issues of judicial traffic control. Until the issue of exhaustion is resolved, the court

process was made unavailable to him due to certain discrepancies on the grievance forms. However, as explained below, those issues did not prevent him from appealing prison officials' failure to timely respond.

<u>Requirement to Appeal Non-Response</u>

Per the ADC's grievance policy, if the inmate receives no response within twenty working days of filing a formal grievance, the inmate should proceed to file an appeal within the next five working days. *See* Doc. No. 42-1 at 12. Specifically, in section IV, F. describing Step Two, the Formal Grievance Procedure, ADC policy provides:

> If an inmate has not received a response to his/her Unit Level Grievance within the allotted time frame as stated on the Acknowledgement Form and/or the Extension Form, if applicable, the inmate may move to the next level of the process, an appeal to the Chief Deputy/Deputy/Assistant Director's Level within five (5) working days.

*Id.* The PLRA requires prisoners to exhaust any available administrative remedies. *See Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000). Exhaustion "'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002) (emphasis in original)). Appealing prison official's failure to timely respond is an available remedy under the ADC's grievance policy, and accordingly, Munnerlyn was required to

---

cannot know whether it is to decide the case or the prison authorities are to."); *Bryant v. Rich*, 530 F.3d 1368, 1374-77 (11th Cir. 2008) ("Requiring jury trials to resolve factual disputes over the preliminary issue of exhaustion would be a novel innovation for a matter in abatement and would unnecessarily undermine Congress's intent in enacting the PLRA's exhaustion requirement: that is, to 'reduce the quantity and improve the quality of prisoner suits.'") (quoting *Porter v. Nussle,* 534 U.S. 516, 524 (2002)). *See also Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015); *Messa v. Goord*, 652 F.3d 305, 309 (2d Cir. 2011); *Drippe v. Tobelinski*, 604 F.3d 778, 782 (3d Cir. 2010).

appeal prison officials' failure to timely respond to his grievances in order to exhaust his claims in this lawsuit.

With respect to VU-14-1125, Munnerlyn does not claim that he appealed the non-response, and he does not address the requirement that he appeal a non-response in his responses to Dr. Iko's motion for summary judgment. *See* Doc. Nos. 50-52. Rather, he argues that his appeal of the late response was timely and served to exhaust VU-14-1125. ADC policy required Munnerlyn to appeal within five working days after he did not receive a timely response to this grievance. He did not do so. Accordingly, Munnerlyn did not follow the ADC grievance policy, his November 2014 appeal was untimely, and VU-14-1125 does not serve to exhaust his claims.

<u>Whether Munnerlyn Appealed Non-Response</u>

The parties dispute whether Munnerlyn appealed prison officials' non-response with respect to VU-14-1325, VU-15-1432, and VU-15-1433. Munnerlyn claims he submitted the appropriate appeals but acknowledges that they may not have been received. He maintains that the ADC's failure to use some sort of log-in procedure to track grievances and appeals submitted by inmates renders the grievance process unavailable to him. The Eighth Circuit has found administrative remedies to be unavailable where prison officials prevented inmates from utilizing the grievance procedures or where officials failed to comply with such procedures. *See Gibson v. Weber*, 431 F.3d 339 (8th Cir. 2005); *Miller v. Norris*, 247 F.3d 736 (8th Cir. 2001). The United States Supreme Court held that an administrative remedy is unavailable when "it operates as a simple dead end," or when it "might be so opaque that it becomes, practically speaking, incapable of use." *Ross v. Blake,* 136 S.Ct. 1850, 1859 (2016).

Munnerlyn has not shown that prison officials prevented him from utilizing the grievance procedure. He simply claims that he put his appeals in the appropriate box in a timely manner.

Byers testified that her office stamps everything it receives on a daily basis. There are many other documents submitted by Munnerlyn that were stamped as received. Additionally, Byers testified that her office would send an acknowledgement form if they had received an appeal. Munnerlyn testified that he believes he wrote letters in response to not receiving any response to his appeals, but he produced no such letters regarding the grievances at issue. Finally, Munnerlyn has offered no additional evidence that there were any particular problems with the mail system although he claims problems with the mail are a widespread problem. Munnerlyn cited one case where a prisoner's grievance was inexplicably lost for a period of time. *See Mason v. Corizon, Inc.,* No. 6:13-CV-06110, 2014 WL 4771862, at *3 (W.D. Ark. Sept. 24, 2014) (neither party could explain why appeal dated July 7, 2013, was not received until August 20, 2013). One instance of missing mail several years ago is insufficient to show that mail is routinely lost or that the grievance procedure was unavailable to Munnerlyn. In sum, the Court agrees with the following statement by Judge Susan O. Hickey of the Western District of Arkansas, who recently dealt with a similar claim:

> The Court is troubled by the notion of excusing Plaintiff's failure to exhaust his remedies in this situation due to his appeal receiving no response without any evidence, other than his own word, that he actually submitted an appeal. To do so would effectively allow ADC prisoners to claim that they had submitted an appeal for remedy exhaustion—without actually having done so—and claim that they received no response, thereby easily sidestepping the PLRA's well-established requirement that prisoners must first fully exhaust their administrative remedies prior to filing a section 1983 action.

*Lewis v. Kiker*, No. 6:14-CV-6147, 2017 WL 2123871, at *6 (W.D. Ark. May 16, 2017).

The grievance procedure was also not made unavailable to Munnerlyn due to discrepancies on the grievance forms. Munnerlyn points out that the language on the rejection/acknowledgment form (Attachment II) is confusing. The language there instructs the inmate to use that form to appeal a rejection of his grievance, and makes no reference to appealing a non-response. The

17

Court agrees this form should clarify that it is to be used to appeal a non-response.[3] However, the grievance policy clearly instructs inmates to complete the appeal portion of Attachment II if the inmate "did not receive a response or extension within the timeframe." Doc. No. 42-1 at 13. Munnerlyn has not claimed that these instructions resulted in his failure to appeal the prison's non-response. He also acknowledged he had a copy of the grievance policy. Additionally, Munnerlyn contends that he did appeal the non-response with respect to three of the grievances at issue, and acknowledged the specific policy requirement that a non-response be appealed in the accompanying letters he wrote. Doc. No. 58 at 36-37. Accordingly, any confusion created by the instructions on Attachment II did not prevent Munnerlyn from following policy and using Attachment II to appeal a non-response.[4]

Munnerlyn also complains that VU-15-1433 was rejected because he did not submit Attachment III or IV. He claims he did not have Attachment III or IV and could not obtain a blank copy from the library. It is true that the box checked on the rejection of this grievance informed him that his appeal was rejected because he did not submit these specific forms. However, Byers explained that the appeal was rejected because he did not complete Attachment II, but instead

---

[3] Magistrate Judge Jerome T. Kearney has also noted his concerns about the instructions on Attachment II. He stated:

> . . . I am troubled by the fact that the Acknowledgment Form sent to Plaintiff contains no direction in the event that he did not receive a response by June 24, 2015. Ms. Byers acknowledged in the hearing that nothing on the form itself advises an inmate to proceed absent a timely response, and that such should probably be noted. To me, the form should read, "If you disagree with a rejection, **or do not receive a rejection by the date set forth above**, . . . ."

*Hill v. Correct Care Sols., LLC,* No. 5:16CV00015-SWW-JTK, 2016 WL 5844173, at *4 (E.D. Ark. Aug. 23, 2016) (emphasis in original), *report and recommendation adopted,* No. 5:16CV00015-SWW-JTK, 2016 WL 5852858 (E.D. Ark. Oct. 4, 2016).

[4] Munnerlyn also argues that he exhausted VU-14-701 without writing anything on Attachment II. Munnerlyn received a timely response to VU-14-701 on Attachment IV and appealed that. *See* Doc. No. 42-1 at 31. There would be no requirement under the policy that he use Attachment II.

submitted a blank copy. Munnerlyn claims he did complete Attachment II (but the copy he submitted is not stamped as received). Accordingly, his ability to obtain copies of Attachment III or IV had no bearing on his appeal.

The Court finds that Munnerlyn did not exhaust VU-14-1325, VU-15-1432, and VU-15-1433 because he did not properly appeal prison officials' failure to timely respond to these grievances. The evidence in this case establishes that anything received from a prisoner is routinely stamped when received, and that appeals are acknowledged. Munnerlyn's alleged appeal of the non-response to VU-14-1325 is not stamped as received. *See* Doc. No. 50 at 22-23. Byers testified she received no appeal or letters from Munnerlyn with respect to this grievance. Munnerlyn's alleged appeal of the non-response to VU-15-1432 is not stamped as received. *See* Doc. No. 50 at 27-29. Byers testified she did not receive these documents.[5] Finally, with respect to VU-15-1433, Byers testified she received a blank copy of Attachment II and the accompanying letter. Munnerlyn's completed appeal of the non-response is not stamped as received. His accompanying letter is. The appeal was rejected because Attachment II was not completed.[6] The evidence in the record shows that these three grievances were not exhausted because Health Services' failure to timely respond was not properly appealed. Therefore, these grievances do not serve to exhaust Munnerlyn's claims against Dr. Iko and Griffin.

---

[5] Because the Court finds that Munnerlyn did not follow the ADC's grievance policy and appeal prison officials' failure to respond, the court does not reach Munnerlyn's arguments regarding whether VU-15-1432 would be a timely grievance regarding Dr. Iko's behavior in 2014.

[6] At the evidentiary hearing, Munnerlyn complained that VU-15-1433 was redesignated as a medical grievance and that it became lost at that point. However, the evidence shows that Munnerlyn's appeal of a non-response was rejected because he did not complete Attachment II. The designation of the grievance as medical had no impact on Munnerlyn's appeal and is therefore irrelevant to the exhaustion of VU-15-1433.

## IV.  Conclusion

The undersigned recommends Griffin's motion for summary judgment be granted, and that Dr. Iko's motion for summary judgment be granted.  Munnerlyn's claims against Dr. Iko and Griffin should be dismissed without prejudice.

DATED this 7th day of August, 2018.

_____
UNITED STATES MAGISTRATE JUDGE